STATE OF CONNECTICUT *v.* JOSE DIAZ
(AC 25308)

DiPentima, Gruendel and McDonald, Js.

Argued November 30, 2005—officially released March 28, 2006

*Robert M. Berke,* for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Joseph J. Harry,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Jose Diaz, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1), and larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b (a). The defendant claims that the trial court improperly (1) precluded a defense witness from testifying at trial, (2) removed a juror during the trial, (3) denied his *Batson*[1] challenge and (4) instructed the jury on burglary in the first degree.[2] In addition, the defendant claims that prosecutorial misconduct deprived him of the right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 30, 2003, the defendant appeared four separate times at the back porch of 681 Myrtle Avenue, Bridgeport, the home of Raul Cruz, in order to retrieve a television that had been stolen from his thirteen year old daughter. Cruz, who was in a wheelchair due to an accident that he had had years before, Randolph Armstrong and Brenda Cook, who were in Cruz's home to assist him, were present on each occasion.

---

[1] *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[2] At oral argument, the defendant abandoned an additional claim that the court improperly infringed on his right to cross-examination by denying his inquiry into the victim's use of narcotics.

The defendant had been told that the stolen television was located at Cruz' home, and he twice went to the back porch with his daughter and later with two other men. On the fourth and final time, the defendant returned to the back porch with his brother, Conrad Diaz, his eldest son and another man. During that encounter, an argument ensued, escalating to fisticuffs, and the four men entered the home, overturning Cruz in his wheelchair. Amidst the melee, household items were broken, a pocketbook and cellular telephone were taken from the floor, and Conrad Diaz drew a knife and stabbed Armstrong. The defendant was stopped later that day by the police and was found to be in possession of Cook's identification card.

The defendant was charged in October, 2003, with burglary in the first degree in violation of § 53a-101 (a) (2), robbery in the first degree in violation of § 53a-134 (a) (1), assault in the first degree in violation of § 53a-59 (a) (1), assault in the third degree in violation of § 53a-61 (a) (2), criminal mischief in the third degree in violation of § 53a-117 (a) (1), and larceny in the sixth degree in violation of §§ 53a-119 and 53a-125b (a). A jury trial was held from February 5 to 9, 2004. After the state completed its case-in-chief, the defendant moved for a judgment of acquittal; the court granted the motion as to assault in the third degree and denied the motion as to all other counts. On February 6, 2004, the state filed a substitute information charging the defendant with the remaining five counts. The jury found the defendant guilty on the counts of burglary in the first degree, criminal mischief in the third degree and larceny in the sixth degree, and not guilty on the remaining counts. The defendant filed a motion for a judgment of acquittal and a new trial, which was denied. The court sentenced the defendant to a total of eight years incarceration.[3] This appeal followed.

---

[3] Sentences of thirty days of incarceration for each of the counts of criminal mischief and larceny were to run concurrently with the eight year sentence imposed on the count of burglary in the first degree.

## I

The defendant first claims that the court violated his right to present a defense under the sixth amendment to the United States constitution by allowing a witness, his brother Conrad Diaz, to invoke his fifth amendment privilege against self-incrimination through representation of counsel, rather than requiring him to take the witness stand and personally invoke the fifth amendment privilege at a hearing. Because it was not preserved, we decline to review the defendant's claim.

The defendant made no objection to the procedure followed at trial.[4] Further, he has not advanced a theory by which this claim should be reviewed. "It is well

---

[4] The following colloquy among the attorneys and the court represents the extent of the discussion:

"The Court: Are you calling [Conrad Diaz]?

"[Defense Counsel]: I'm calling him, but this is going to be in the absence of the jury.

"[The Witness' Counsel]: We're going to take the fifth [amendment].

"The Court: Then why should we go . . .

"[Defense Counsel]: I have to create a record.

"The Court: You can create a record.

"[The Witness' Counsel]: Can I do it on the record?

"The Court: Sure. Of course you can.

"[Defense Counsel]: I have no problem with that.

"The Court: I have no problem. Do you object to that . . . ?

"[The Prosecutor]: No.

"[Defense Counsel]: If he has an objection . . .

"The Court: I don't think there's anything the matter with it. Obviously, he's charged under the same circumstances, under the same case and his fifth, I . . .

"[Defense Counsel]: I have no problem.

"The Court: I think the representation is Mr. . . .

"[Defense Counsel]: That's fine. Just needed to create a record.

"The Court: [Defense counsel] contemplates and has subpoenaed the original codefendant in this case, the brother who is charged with, who in effect the testimony has been that he has actually done the stabbing. [The witness' counsel] is here representing him. He's representing to the court that under no circumstances would he testify and that he would take the fifth amendment in the absence of the jury. Is that correct? Okay. It certainly is a valid claim. So, I think you're covered on that.

"[Defense Counsel]: Thank you."

established that generally this court will not review claims that were not properly preserved in the trial court. . . . Where a defendant fails to seek review of an unpreserved claim under either [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)] or the plain error doctrine [as set forth in Practice Book § 60-5], this court will not examine such a claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Abraham*, 64 Conn. App. 384, 404 n.18, 780 A.2d 223, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001). Accordingly, we decline to review the defendant's claim.

II

The defendant next claims that the court improperly dismissed a juror during the trial. The defendant argues that the court's removal of the only Hispanic juror on the case constituted an abuse of discretion. We disagree.

On February 6, 2004, as the panel of jurors was assembling, a court clerk handed a note to the court that had been given to him by one of the jurors. The court read counsel the note,[5] which stated that it had been brought to the juror's attention that the defendant's sister worked in the same bank branch as the juror and that the juror's grandmother was very ill, neither of which she believed would impede her ability to serve as a juror. The note had been written to "bring it to [the court's] attention just in case it gets in the way of the

[5] The court read aloud the note in its entirety: "It was brought to my attention that the sister of [the defendant] works in the same branch that I do. I don't know if this matters, but I do not feel any different toward the defendant as I did in the beginning or at the end of yesterday.

"Two, my grandmother is now on her deathbed, and the doctors cannot give us an exact length of time for her. It can be today, tomorrow, next week or next month. I just thought I'd bring it to your attention; just in case anything happens, I will not be able to attend court if it is still on trial. So . . .

"Three, as of right now, I do not mind staying as a juror, but I thought I'd bring it to your attention just in case it gets in the way of the trial."

trial." The court proceeded to discuss with counsel their thoughts on the issue and decided to call the juror in to ask her opinion. After answering the questions of the court and both parties, during which she affirmed that "[s]o far, [she] didn't feel any different," the juror was asked to leave with the marshal to allow the court and counsel to confer.

Defense counsel argued that the juror should remain because she was the only Hispanic juror[6] and because he believed that she was being honest in her confidence that she would remain impartial despite the situation at work. The state responded that the juror's ethnicity should make no difference with regard to her impartiality and that she had two potential conflicts: her work situation and her sick grandmother. After hearing the arguments, the court decided to dismiss the juror, and defense counsel objected.

We first set out our unequivocal standard of review of a trial court's decision to remove a juror. "[T]he trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bowens*, 62 Conn. App. 148, 154, 773 A.2d 977, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). "A trial court may dismiss a juror who is unable to perform his or her duties upon a finding of cause. . . . On appeal, the defendant bears the burden of showing that the rulings of the trial court resulted in a jury that could not judge his guilt impartially." (Citations omitted; internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 356, 363–64, 748 A.2d 891 (2000).

General Statutes § 54-82h (c) provides in relevant part that "[i]f, at any time, any juror shall, for any reason, become unable to further perform the duty of a juror,

---

[6] See part III.

the court may excuse such juror . . . ." The defendant fails to posit any reason that the court abused its discretion other than the fact that the dismissed juror was the only Hispanic juror and the defendant is Hispanic.[7] In addition, the defendant does not allege that the remaining jury was unable to judge his guilt impartially. Although the court did not state explicitly its reasons, the record provides ample evidence that because of the juror's potential work conflict, coupled with the acute illness of her grandmother, the court had cause to excuse her. Accordingly, the defendant's claim fails.

### III

The defendant next claims that the court improperly denied his *Batson* challenge. Specifically, the defendant claims that he challenged the state's dismissal of a Hispanic venireperson, pursuant to *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and requested an articulation, but the prosecutor never was required to assert a race neutral, nondiscriminatory explanation for his use of a peremptory challenge, as mandated by law. We disagree.

During voir dire proceedings, one Hispanic juror was excused by the court and another was excused through the prosecutor's peremptory challenge. Directly after the peremptory challenge, and before the third and final potential Hispanic juror from the jury pool entered the courtroom for jury selection, defense counsel took note of the previous two dismissals:

"[Defense Counsel]: Would Your Honor indicate to the state and for the record that we would like . . .

---

[7] Defense counsel explained his position to the court: "It's not that . . . because she's Hispanic she's going to rule in his favor or against him. It's that because she is Hispanic, perhaps she understands a certain mentality. . . . [T]here is no way that one can ignore that the jury only has one Hispanic in the jury and that the defendant is Hispanic. That doesn't mean that she's going to rule one way or the other."

we'd like someone who is Hispanic on this jury, and there haven't been that many. One, I think, was excused by the court. This one is excused by the state.

"The Court: The one that [was] excused didn't want . . . that was obvious.

"[Defense Counsel]: I understand. I'm not making any reflection on the court. I just noticed that the next one is also Hispanic. So, I would mention it to the state in terms of a *Batson* claim, if necessary to articulate, we would like someone . . . .

"The Court: I don't blame you.

"[Defense Counsel]: There hasn't been that many in the pool.

\* \* \*

"The Court: [The prosecutor in this case], I know he takes—I've had [the prosecutor] before, so he's never been shy about that kind of—taking people on that basis, no.

"[Defense Counsel]: No reflection on [the prosecutor], Your Honor, but I thought I should make the point to you."

The third and final Hispanic juror was accepted by both parties,[8] and the defendant now claims that this exchange with the court constituted a valid *Batson* challenge on which the court did not act.

"In *Batson* [v. *Kentucky*, supra, 476 U.S. 79] the United States Supreme Court recognized that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the

---

[8] There was no additional discussion until the juror was removed on the second day of trial because of a potential conflict at work and the illness of her grandmother. See part II.

integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the Equal Protection Clause [of the fourteenth amendment to the United States constitution] forbids [a party] to challenge potential jurors solely on account of their race . . . ." (Internal quotation marks omitted.) *State* v. *Latour*, 276 Conn. 399, 408, 886 A.2d 404 (2005). "Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 621, 841 A.2d 181 (2004).

The fundamental question in this appeal is whether defense counsel properly raised an objection asserting a *Batson* challenge during jury selection. It is clear from the colloquy with the court that defense counsel was concerned about the paucity of Hispanic jurors in the jury pool. It is equally evident that had the state peremptorily challenged the third and final Hispanic juror, defense counsel likely would have raised a *Batson* challenge. Defense counsel's comments that he might raise a *Batson* challenge in the future were insufficient to

constitute a valid *Batson* challenge. The defendant's claim therefore fails.

## IV

The defendant further claims that the court improperly charged the jury on burglary in the first degree. The defendant filed no written request to charge and failed to object to the court's instructions. He now requests review under *State* v. *Golding*, supra, 213 Conn. 239–40. Due to the inadequacy of the defendant's brief, however, we are unable to discern the crux of his claim. The defendant lists the claimed deficiencies of the charge without explanation or legal analysis. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). Therefore, we decline to review the defendant's claim.

## V

Last, the defendant claims that prosecutorial misconduct deprived him of a fair trial. Specifically, the defendant claims that, during closing argument to the jury, the prosecutor improperly (1) expressed his personal opinion, (2) appealed to the passions and emotions of the jury, and (3) misstated fact and law. We decline to review the defendant's claim.

Despite having listed various statements made by the prosecutor during closing argument in his brief, the defendant fails to conduct any analysis of these statements. Instead, the defendant cites broad language from seminal cases for the proposition that the prosecutor's statements were improper. At no point in the defendant's argument does he compare the prosecutor's

statements to those in the cases he cites, nor does he give more than a blanket assertion of their impropriety. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082, 110 S. Ct. 1814, 108 L. Ed. 2d 944 (1990); see *Ward* v. *Greene*, supra, 267 Conn. 546. Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.