## STATE OF CONNECTICUT *v.* RICK FELIX
### (AC 29517)

DiPentima, Harper and Berdon, Js.

Argued September 25—officially released December 30, 2008

*H. Jeffrey Beck,* for the appellant (defendant).

*Rocco A. Chiarenza,* special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *James M. Bernardi,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Rick Felix, appeals from the judgment of conviction, rendered following a jury trial, of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (4), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4). The defendant was sentenced to a total effective term of forty years imprisonment. On appeal, the defendant claims that his right to a fair trial was violated due to prosecutorial improprieties[1] occurring

---

[1] Although most of the Supreme Court cases that we cite in this opinion refer to impropriety as misconduct, we have taken the liberty to substitute the noun impropriety for misconduct when quoting these opinions. See *State v. Fauci,* 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007).

in rebuttal to his closing argument.[2] We hold that the defendant's right to a fair trial was not violated. We accordingly affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 13, 2004, the defendant, accompanied by Renel Romias and Marvin Nowell, went to the home of Randy Johnson and his parents located at 261 Ely Avenue, Norwalk. Johnson and Darrel McFadden were at the Johnson home. The five men spoke in the hallway of the Johnson home where the defendant suggested that they rob a taxicab. The defendant stated that he had done it before and that it was easy. The individuals agreed on a plan in which Johnson would call a taxicab, and, when it arrived, they would threaten the driver with firearms. Johnson called the taxicab company and requested a pickup at 249 Ely Avenue. The five men walked to 249 Ely Avenue to wait for the taxicab. Romias was armed with a shotgun, and the defendant carried a Derringer handgun.

Ralph Moreau drove the taxicab that responded to the call. When Moreau arrived at 249 Ely Avenue, Romias opened the driver's side door and held a shotgun to Moreau's face. The defendant went to the passenger side door and pointed a handgun at Moreau's face. Romias and the defendant ordered Moreau out of the car. Moreau attempted to drive off, but the defendant shot him twice. The defendant and the other men then ran from the area.

---

[2] The state first argues that "this court should decline review of the defendant's claim[s] because he has inadequately briefed [them] by failing to cite any legal authority or analyze any case law dealing with alleged prosecutorial impropriety." See *State* v. *Diaz*, 94 Conn. App. 582, 592–93, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006). Although the defendant's brief is lacking analysis, he does cite to seminal cases, and the crimes of which he was convicted were serious. We accordingly review his claims of prosecutorial impropriety.

At approximately 4:15 a.m., the Norwalk police department received a report of a possible motor vehicle accident at 309 Ely Avenue. Officer John James Haggerty and Officer Anthony DePanfilis arrived to find Moreau's taxicab wedged in between two trees so that they could not open its doors. The taxicab's engine was still running. Moreau appeared to be gasping for air so the officers broke the window of the taxicab so they could get inside. Paramedics took over soon after the officers had broken the window, and they removed Moreau from the taxicab. At that time, the police investigated the scene as a motor vehicle accident. It was not until Moreau arrived at a hospital that medical staff discovered his gunshot wounds. Moreau subsequently succumbed to his injuries. The medical examiner determined that Moreau died from two gunshot wounds and classified his death as a homicide. The police recovered the two bullets and determined they were .22 caliber bullets. A Derringer handgun is capable of firing a .22 caliber bullet, but a shotgun is not.

A few days later, the defendant visited the Johnson home and stated to Randy Johnson in the presence of McFadden and Syreeta Johnson, Randy Johnson's sister, that he did not mean to shoot the victim, did not want to go to jail, and planned to blame the murder on Romias and to flee to Florida. Detective Ben Trabka of the Shelton police department, the husband of Tracey Trabka, the defendant's former schoolteacher with whom the defendant continued to maintain a relationship, testified that the defendant left a message on his wife's voice mail, in which the defendant identified himself. Detective Trabka testified that the defendant stated in that message that "when he went to Norwalk, everyone said he was going to fuck up, and that's exactly what he did; he went to Norwalk and fucked up. He was looking at a lot of years of jail. His aunt had hired him a lawyer, and it was about the cab shit. It was a

taxi murder. It was in South Norwalk in Roodner Court where he lives. He was looking at charges. He was looking at conspiracy, conspiracy robbery, conspiracy murder. It didn't look good. And he continued to say that all of his boys were locked up, and he was the last one out." The state also admitted into evidence a recording of that voice mail.

At some point, the defendant went to Florida. The Norwalk police obtained an arrest warrant for the defendant, and he was arrested in Florida on December 16, 2004. After the defendant waived extradition, the Norwalk police department transported him back to Connecticut. A jury subsequently found the defendant guilty of felony murder, attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree.

The defendant claims on appeal that eight statements made by the prosecutor during rebuttal in closing arguments to the jury were improper personal opinions and that four of the statements also referred to facts that were not in evidence. The defendant claims that these statements deprived him of his right to a fair trial under the due process clause of the fourteenth amendment to the United States constitution. We disagree.

At the outset, we first note that the defendant failed to object or otherwise to preserve the claim of prosecutorial impropriety by way of objections or motions for a mistrial. Nonetheless, "a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . The reason for this is that the defendant in a claim of prosecutorial [impropriety] must establish that the prosecutorial [impropriety] was so serious as to amount

to a denial of due process . . . . In evaluating whether the [impropriety] rose to this level, we consider the factors enumerated by th[e] court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument, the severity of the [impropriety], the frequency of the [impropriety], the centrality of the [impropriety] to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case. . . . The consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus makes superfluous, a separate application of the *Golding* test. . . .

"This does not mean, however, that the absence of an objection at trial does not play a significant role in the application of the *Williams* factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . [Thus], the fact that defense counsel did not object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted. . . .

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the

fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . . As we have indicated, our determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, 213 Conn. 540, with due consideration of whether that [impropriety] was objected to at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360–62, 897 A.2d 569 (2006).

In determining whether an impropriety has occurred in closing arguments, "the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . . This heightened duty derives from . . . the special role played by the state's attorney in a criminal trial. He is not only an officer of the court . . . but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the citizens of the county. By reason

of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 367–68, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). "If the accused be guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 745–46 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 1030, 166 L. Ed. 2d 428 (2006).

With these principles in mind, we turn to the defendant's specific allegations of prosecutorial impropriety, keeping in mind that the defendant did not object at trial to any of the statements.

## I

## IMPROPER PERSONAL OPINIONS

The defendant claims that eight statements made by the prosecutor during rebuttal were improper because they expressed his personal opinion as to the credibility of witnesses and the defendant's guilt. The state conceded that one of these statements was improper, namely, that the only honor in the case lies with the jury "having the guts" to find the defendant guilty.[3] It

---

[3] The prosecutor argued: "And if you are confronted with proof beyond a reasonable doubt—which you have been confronted with in this case— no matter how hard it is· for you to say that someone who was seventeen

is not necessary, therefore, for us to determine the propriety of that statement. We examine the remaining seven remarks, however, and determine that none of them was improper.

The defendant contends that the prosecutor expressed an improper personal opinion when he described as "honorable" the officers who found Moreau shortly after he was shot.[4] We disagree. A prosecutor may not vouch for the integrity of his witness. *State* v. *Williams*, 41 Conn. App. 180, 183, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996). The propriety of the prosecutor's statement must, however, be examined in the context in which it was made. See *State* v. *Fauci*, 282 Conn. 23, 37–38, 917 A.2d 978 (2007). In the present case, defense counsel argued in closing argument that the defendant's fingerprints were not discovered on Moreau's taxicab. The prosecutor's statement at issue responded to defense counsel's argument by arguing that the police were more concerned with saving Moreau's life than with gathering evidence. Furthermore, the credibility of the police officers was never an issue at the trial. The prosecutor's statement drew directly upon the testimony of Officer Haggerty, who stated that the officers at the scene believed they had responded to a motor vehicle accident, not an assault. Viewed in this context, it is clear that the prosecutor used the term honorable to explain the police

years old at the time of this event, no matter how hard it is for you to say he's guilty and guilty of murder, your honor lies--and maybe the only honor in this case lies with you having the guts, the principle to come in here and stand up and say guilty because that's what the facts require and that's what the law requires."

[4] The prosecutor argued: "The first thing [defense] counsel talked about was that there was a lack of prints in the case. Now, if you recall the way this event happened, the police showed up at the scene of what they thought was a motor vehicle accident. Now these are honorable men, and they don't show up at a scene where somebody's been injured and immediately start thinking about preserving prints when they think they may be able to save the man's life."

officers' conduct, not to vouch for the officers' credibility. Accordingly, the prosecutor's statement was not improper.

The defendant argues next that it was improper for the prosecutor to state that there was "overwhelming evidence" of the defendant's guilt.[5] We disagree. A prosecutor is entitled to comment on the strength of the state's evidence. *State* v. *Moody*, 77 Conn. App. 197, 217, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707, cert. denied, 540 U.S. 1058, 124 S. Ct. 831, 157 L. Ed. 2d 714 (2003). A prosecutor may not state an opinion that a defendant is guilty, but a prosecutor may argue that the evidence proves a defendant's guilt beyond a reasonable doubt. Id. Accordingly, we find that it was not improper for the prosecutor to comment on the evidence of the defendant's guilt.

The defendant argues next that the prosecutor stated numerous improper opinions concerning the credibility of the state's witnesses. We disagree. The statements at issue can be summarized as follows: (1) McFadden and Randy Johnson were telling the truth, playing "their last card" and were "not smart enough to lie";[6] (2) McFadden and Randy Johnson were telling the truth and hoping for the best because they "lack criminal cunning," are not smart enough to think of anything else and were mad at the defendant for killing Moreau and getting them in trouble;[7] (3) the cooperation

---

[5] The prosecutor argued: "The fact that firearms were not recovered does not contradict the ample corroboration in this case and overwhelming evidence in this case of that man's guilt."

[6] The prosecutor argued: "[C]ommon sense says that [if] Darrel McFadden and Randy Johnson wanted to gang up somehow and start telling a lot of lies . . . [t]he first thing they would have done was put that shotgun in his hand. They did not do that because they were telling the truth when they were in the station and when they were on the stand. And they were telling the truth because that's their last card left to play. They're just not smart enough to lie their way out of this . . . ."

[7] The prosecutor argued: "They're laying out the truth hoping for the best because that's all they can do. They really don't have any other choice, and they're not smart enough to think of another one. They lack criminal cunning.

agreements given to McFadden and Randy Johnson could not have motivated statements given to police on November 22, 2004, because the statements preceded the cooperation agreements;[8] (4) an 18th century English author, Samuel Johnson, once said that any fool can tell the truth and that it takes a clever man to lie;[9] and (5) Syreeta Johnson may love her brother, but her testimony was nonetheless the truth because she was trying to "pull herself out of . . . poverty," and "she wouldn't get involved in here if she had to do a lot of lying."[10]

It is not improper for a prosecutor to ask the jury to draw inferences and to exercise common sense. *State v. Fauci*, supra, 282 Conn. 37. A prosecutor may urge the jury to find for stated reasons that a witness was truthful or untruthful. See *State v. Stevenson*, 269 Conn. 563, 585, 849 A.2d 626 (2004). A prosecutor may also "remark on the motives that a witness may have to lie,

They're credible. They're credible because they're just not cunning enough to be otherwise. . . . They want to come in here and tell the truth about [the defendant] because he got them in so much trouble because he killed Ralph Moreau."

[8] The prosecutor argued: "[C]ounsel talked again about cooperation agreements. Like I said, the cooperation—the statements simply gave at the station precede the cooperation agreement. They're not the motivation. There's no story being conjured. They're not the cause of some kind of conjuring of some complex elaborate lie that these two gentlemen [who] had testified would never have been able to testify their way through the case with that type of elaborate anything."

[9] The prosecutor argued: "[T]here's a man named Samuel Johnson who's a famous author; and he said: any fool can tell the truth. It takes a clever man to tell a lie. And the fact of the matter is, is it's just not smart enough to have done anything else but reach for the truth."

[10] The prosecutor argued: "Now, Syreeta Johnson, she may love her brother. I mean, there's no reason to think that she wouldn't. She's trying to pull herself out of the poverty that she was born into obviously. You just have to use your common sense. I mean, basically what she said got said, fits in with everything else, that anger, that how to feel. Why did you have to kill an innocent man when you didn't have to? . . . And you know that the way that she's going, she wouldn't get involved in here if she had to do a lot of lying."

or not to lie, as the case may be." (Internal quotation marks omitted.) Id. When a case involves two competing stories, a prosecutor may reasonably suggest that one is lying. *State* v. *Fauci*, supra, 48. "The distinguishing characteristic of impropriety in this circumstance is whether the prosecutor asks the jury to believe the testimony of the state's witnesses because the state thinks it is true, on the one hand, or whether the prosecutor asks the jury to believe it because logic reasonably thus dictates." Id. Additionally, a prosecutor may properly comment in closing argument on the lack of intelligence of the state's witnesses where the defense has brought their credibility into issue. See *State* v. *Dillard*, 66 Conn. App. 238, 250–51 n.13–14, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001).[11]

The prosecutor's statements at issue here were not improper. The prosecutor never used the word "I" or stated that he based his argument on his personal beliefs. See *State* v. *Moody*, supra, 77 Conn. App. 217 ("using the pronoun I in an argument increases the chances that appropriately structured arguments will deteriorate into expressions of personal opinion" [internal quotation marks omitted]). The prosecutor was entitled to apply common sense to the facts in evidence and to highlight Randy Johnson's, McFadden's and Syreeta Johnson's motives to tell the truth. See *State* v. *Fauci*, supra, 282 Conn. 37; *State* v. *Stevenson*, supra, 269 Conn. 585. Similarly, the prosecutor was entitled to refer to the fact that the testimony of the state's witnesses was by and large consistent. See *State* v. *Fauci*, supra, 47.

[11] In *Dillard*, this court held it was not improper for the prosecutor to state in closing argument: "Then we come to Lonnie Cross. Lonnie Cross is a piece of work, and you'd probably cross the street if you saw him come the other way. . . . Let me tell you another thing about people who commit crimes. People who commit crimes by and large are not smart. Lonnie Cross is not smart. Demetrius White is not smart. Neither is Julio Burgos. None of them are. That's why they get caught." (Internal quotation marks omitted.) *State* v. *Dillard*, supra, 66 Conn. App. 250–51 n.13.

It was also not improper for the prosecutor to reference a literary quotation. "The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Santiago*, 269 Conn. 726, 747, 850 A.2d 199 (2004). Last, the prosecutor's statements regarding McFadden's and Randy Johnson's intelligence are nearly identical to those we held proper in *State* v. *Dillard*, supra, 66 Conn. App. 250–51 n.13–14.

Accordingly, we find that except for the statement conceded by the state to have been improper, the statements made by the prosecutor during rebuttal were not improper personal opinions.

## II

### FACTS THAT WERE NOT IN EVIDENCE

The defendant argues that the prosecutor made four comments during rebuttal that referred improperly to facts that were not in evidence. We disagree.

The defendant argues first that the prosecutor's statements referring to Randy Johnson and McFadden playing their last card[12] and lacking criminal cunning[13] improperly referenced facts that were not in evidence. "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 587. The prosecutor's statements did not suggest that the prosecutor had specific knowledge as to Randy Johnson's and McFadden's state of mind or intelligence. Rather, he asked the jury to draw inferences from the facts that were in evidence. The jury could have inferred from Randy Johnson's and McFadden's testimony that they thought the best way to help themselves was to testify truthfully. The jury could also

[12] See footnote 6.
[13] See footnote 7.

have inferred from the same testimony that Randy Johnson and McFadden were not cunning criminals. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning." (Internal quotation marks omitted.) *State* v. *Moody*, supra, 77 Conn. App. 216. Accordingly, we find that these statements did not refer improperly to facts that were not in evidence.

The defendant argues next that the prosecutor referred improperly to facts that were not in evidence when he stated that McFadden's and Randy Johnson's testimony was not conjured to obtain the cooperation agreement.[14] The state admitted into evidence separate statements made by Randy Johnson and McFadden on November 22, 2004. McFadden also testified that he did not receive a cooperation agreement until the summer of 2005, and Randy Johnson's cooperation agreement, which was admitted into evidence, was dated September 19, 2005. This evidence suggests that McFadden's and Randy Johnson's testimony was not influenced by their cooperation agreements because the testimony was substantially similar to their statements made long before either witness was offered a cooperation agreement. See Conn. Code Evid. § 6-11 (b) ("[i]f the credibility of a witness is impeached by . . . a suggestion of bias . . . evidence of a prior consistent statement made by the witness is admissible"). Accordingly, we find the prosecutor's statement did not refer improperly to facts that were not in evidence.

The defendant argues last that the prosecutor referred improperly to facts that were not in evidence when he stated that Syreeta Johnson was trying to "pull herself out of . . . poverty . . . ."[15] Again, the propriety of this statement must be examined in its context.

---

[14] See footnote 8.

[15] See footnote 10.

See *State* v. *Fauci*, supra, 282 Conn. 45. The defendant asked the jury during closing argument to "consider very strongly . . . what would Ms. Johnson do to protect the little baby brother that she helped raise." The prosecutor argued in rebuttal that "the way [Syreeta Johnson is] going, she wouldn't get involved in here if she had to do a lot of lying." The prosecutor asked the jury to draw that inference from the facts that were in evidence that Syreeta Johnson lived in a three bedroom apartment with her mother, father, two brothers and her son, worked thirty-five to forty hours per week and simultaneously took five classes at a community college.

Accordingly, we find that the prosecutor's statement did not refer improperly to facts that were not in evidence.

## III

## DUE PROCESS ANALYSIS

We now turn to the question of whether the single instance of impropriety[16] "so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 589. In *State* v. *Williams*, supra, 204 Conn. 540, our Supreme Court held that prosecutorial impropriety due process analysis focuses on the following factors: (1) the extent to which the impropriety was invited by the defense; (2) the frequency of the impropriety; (3) the severity of the impropriety; (4) the centrality of the impropriety to the critical issues in the case; (5) the strength of the state's case; and (6) the strength of the curative measures adopted by the court. These factors are viewed in light of the entire trial. *State* v. *Stevenson*, supra, 574.

---

[16] See footnote 1.

## A

## Whether the Impropriety was Invited

The state does not argue that the defendant invited the single instance of prosecutorial impropriety. Accordingly, we agree with the defendant that he did not invite the prosecutor to argue to the jury that the only honor in the case lies with the jury "having the guts" to stand up and say that the defendant was guilty.

## B

## Frequency and Severity

One instance of impropriety over the course of an entire trial is not frequent. See *State* v. *Stevenson*, supra, 269 Conn. 593–94. The conduct was also not severe. "We first note that we consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. . . . Given the defendant's failure to object, only instances of grossly egregious [impropriety] will be severe enough to mandate reversal." (Citation omitted.) *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003). In *Thompson*, our Supreme Court held that impropriety was not severe when a prosecutor stated without objection that the defendants had "reserved a place in hell for themselves." (Internal quotation marks omitted.) Id., 480. On the basis of this precedent, we do not find that the conceded impropriety, which referred to the juror's honor, was severe.

## C

## Centrality to the Critical Issues and Strength of the State's Case

The state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial. See id.,

482. In the present case, the evidence of the defendant's guilt was strong. The state presented two witnesses who testified that they saw the defendant shoot Moreau, Syreeta Williams testified that the defendant admitted to shooting Moreau and expressed remorse, the defendant's confession on his teacher's answering machine corroborated the witnesses' testimony and the defendant's flight to Florida showed consciousness of guilt. See id., 481–82 (state's case strong when testimony placed defendant at site of shooting with gun in hand, police identified gunshot residue on defendant's jacket and defendant's conduct after shooting showed consciousness of guilt); see also *State* v. *Figueroa*, 257 Conn. 192, 196, 777 A.2d 587 (2001) (flight, when unexplained, tends to prove consciousness of guilt).

We also find that the impropriety was not central to the critical issues of the case. "A prosecutor . . . may not appeal to the emotions, passions and prejudices of the jurors . . . or otherwise inject extraneous issues into the case . . . ." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 473. The prosecutor's statement that referred to the jury's honor was extraneous to the issues properly before the jury. We find, however, that the statement was not central to the critical issues of the case because it did not contain any improper evidence establishing the defendant's guilt.

D

Curative Instructions

Although the court gave no instructions intended specifically to cure the single instance of prosecutorial impropriety, we note that the defendant did not object or request a special instruction. By failing to bring it to the attention of the court, the defendant bears much of the responsibility for the fact that this claimed impropriety was uncured. *State* v. *Stevenson*, supra, 269 Conn.

597. Failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time. Id. In addition, the court reminded the jury in its general instructions that "[c]ertain things are not evidence, and you may not consider them in deciding what the facts are. These include arguments and statements by lawyers. . . . [T]he credibility and believability of the witnesses and the weight to be given to their testimony are matters entirely within your hands." We conclude, therefore, that the court's general curative instructions, when viewed in light of the other *Williams* factors, were sufficient to cure any harm to the defendant caused by the prosecutor's one instance of impropriety. See *State* v. *Stevenson*, supra, 598.

The judgment is affirmed.

In this opinion the other judges concurred.