******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TYRONE TARVER
(AC 38306)

Keller, Mullins and Pellegrino, Js.

*Argued February 29—officially released June 21, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, White, J.)

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *David I. Cohen*, former state's
attorney, and *Joseph Valdes*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Tyrone Tarver, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and conspiracy to commit robbery in the third degree in violation of General Statutes §§ 53a-48 and 53a-136 (a). On appeal, the defendant raises two separate claims. First, he claims that "the unauthorized ex parte excusal of a juror by an unidentified person without notice and a hearing violated [General Statutes] § 54-82h (c)[1] and various state and federal constitutional rights, including the right to be present during jury selection to ensure an impartial jury of one's peers, and the right to a public trial." (Footnote added.) In his second claim, he alleges that "the trial court abused its discretion in refusing to rule on the motion in limine and in denying a mistrial after [a] witness testified, just as defense counsel had anticipated, that the defendant went to jail for robbery." We disagree with both claims, and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In late October, 2009, the defendant asked the victim, Denny Alcantara, to give him some marijuana without payment up front. The victim refused the defendant's request. As a result of the victim refusing his request for marijuana on credit, the defendant told his friend Shari Johnson that he planned to set up a marijuana transaction with the victim so that he could rob the victim.

Shortly thereafter, the defendant set in motion his plan to rob the victim. Specifically, on November 4, 2009, the defendant arranged for the victim to meet him and two of his friends, Darryl Bonds and Joshua McNeil, at 62 Stillwater Avenue in Stamford, the home of Anthony Lacrete. The victim arrived at the designated location, retrieved six bags of marijuana that he had stored at Lacrete's apartment, and waited for the defendant on the front porch. Meanwhile, Ivania Collazo, Bonds' cousin, gave the defendant, Bonds, and McNeil a ride to a parking lot on Stillwater Avenue.

While the victim waited on the porch for the defendant, Richard Patterson, a mutual acquaintance of the defendant and the victim, walked by. Patterson stopped and spoke briefly with the victim. After they conversed, Patterson continued walking down the block, and he encountered the defendant and his friends. Patterson told them that the victim was awaiting them. Patterson then telephoned the victim to tell him that the defendant was on his way to meet him.

On arriving at the meeting point, the defendant and at least one of his friends took from the victim the marijuana, some cash, his cell phone, and the leather

jacket and gold chain he was wearing. In the process, the victim was shot twice in the abdomen. The victim died shortly thereafter. Cell phone call details and cell tower location data placed the defendant at the scene during the foregoing events.

The defendant, Bonds, and McNeil returned to Collazo's car, which she drove away from the area. In the car, as they discussed the events that had just unfolded, Bonds said that the victim had marijuana and a cell phone, and the defendant said that the victim had a black leather jacket, a gold chain, and some money. The defendant was wearing the victim's leather jacket. At a nearby store, McNeil left the car and Elvis Battista, Collazo's brother, got in. The defendant told Battista that he had robbed the victim, specifying that he had taken the leather jacket, the gold chain, the marijuana, and some cash.

En route to Collazo's apartment in Bridgeport, Bonds received a call on the victim's cell phone, which he answered before throwing the phone out of the window. The defendant and Bonds spent the night at Collazo's apartment, smoking the victim's marijuana.

After a trial, on January 18, 2013, the jury returned a verdict of guilty on all of the charges. Thereafter, the court sentenced the defendant to a total effective term of fifty years imprisonment and ten years special parole. This appeal followed. Additional facts will be provided as necessary.

I

The defendant claims that "the unauthorized ex parte excusal of a juror by an unidentified person without notice and a hearing violated . . . § 54-82h (c) and various state and federal constitutional rights, including the right to be present during jury selection to ensure an impartial jury of one's peers, and the right to a public trial." Specifically, he contends that a "reversal [of his conviction] is required since an unidentified person, not the court, excused the juror, and the court did not make a reliable, independent determination that the juror could not perform her duty, as required by statute; the defendant was deprived of his right to be present, his right to individual voir dire, his right to be heard by himself and by counsel, his right to due process of law, and his right to a public trial; and the harm from the statutory and constitutional violations must be presumed." We disagree.

The following procedural history pertains to this claim. Jury selection in the defendant's trial occurred over five days between November 28, 2012, and December 11, 2012. The parties selected a total of twelve regular and four alternate jurors. In the course of selecting jurors, on December 4, 2012, venireperson E.A.[2] was selected as the seventh regular juror, and venireperson L.C. was selected as the twelfth regular juror. By the

conclusion of jury selection, the defendant had not exhausted all of his allotted peremptory challenges: he had exercised thirteen of his allotment of sixteen peremptory challenges and had three remaining.

Trial was set to begin on the morning of January 7, 2013, at approximately 10 a.m. As of 10:41 a.m. on that date, however, three regular jurors, including L.C., and one alternate juror had not yet reported to the courthouse. The court noted, in addition, that L.C. had reported previously that he knew someone in the case. The court stated that it therefore was going to bring him in for voir dire when he arrived. The court then asked the clerk to telephone the missing jurors.

Then, at approximately 11:29 a.m., the court stated: "The clerk has informed me that [E.A.] was released downstairs in the jury assembly room. She claimed that she has the flu and could not remain. And she is not in the building. I don't know who told her she could leave. Nobody informed the court. So, the parties didn't get a chance to voir dire her. . . . [E.A.] was released, and [L.C.] is the one who claims he knows somebody."

Defense counsel immediately stated: "Your honor . . . I'm requesting that the court have the clerk call [E.A.] back. We went through careful voir dire of [E.A.]. . . . She indicated that she was fully aware of this process [and] wanted to serve. She's an African-American lady and, while my client, under the guise of a jury of his peers, that doesn't mean people that are African-American like he is or his same age, but I think the panel benefits from a cross [section] of people. [E.A.] was an African-American lady, sixty-five years old, and seemed to be very well open to serving. And typically, as in the case of *State* v. *Apodaca* [303 Conn. 378, 33 A.3d 224 (2012)] . . . if a jury member has an issue, it was incumbent upon us to bring that person into the courtroom, as I'm sure Your Honor probably adopts that theory, voir dire the person . . . and make a determination.

"I don't know who in the building just let this person go. It doesn't sound like it's above board. And, just to make sure we're beyond reproach and nothing is questionable, I think the court—I'm asking the court to have the clerk call that person back so we can at least have that person brought into the courtroom. Because as we stand here, no one, not even Your Honor, knows who let her go and why . . . . There was some representation that she might have had a cold. That's all we have so far. So, now we have a panel member that's just let go, and we ask that she be brought back." Following defense counsel's argument, the court asked the prosecutor if he had anything to say, and he responded: "No, Your Honor."

Then, the court brought in L.C. for voir dire, and, following questioning, the prosecutor indicated that he

would like the juror released from duty, while defense counsel stated that he would like the juror to remain seated. The court ultimately determined that L.C. should be released, and that it would pick an alternate juror to replace him.

The court then took up the matter of E.A., stating the following: "And let me just deal with the issue of [E.A.] while we're at it. Again, I didn't give permission for that juror to be released. I'm not sure who did give permission. I take it, it was our jury clerk, and I'm told that the juror represented that she had the flu and was unable to serve. And I'm not going to delay the trial. We have jurors waiting. We have witnesses. We're ready to proceed. So, we're going to use the statutory procedure for choosing two of the alternates who will be seated as regular jurors. I'm going to give them my preliminary instructions, and we're going to proceed with the trial."

L.C. was brought back into the courtroom and released from service. Two alternate jurors were then chosen by the clerk by lot to be sworn in as regular members of the jury. The court asked defense counsel if he had anything else, to which he responded: "Nothing, nothing." The court then swore in the jury panel, after which trial commenced at approximately 11:45 a.m.

A

We first address the defendant's argument that the court violated § 54-82h (c). "Our standard of review for a trial court's decision to excuse a juror is well established. Section 54-82h (c) permits trial courts to excuse a juror [i]f, at any time, any juror shall, for any reason, become unable to further perform [his or her] duty . . . . The power to excuse a juror under this section is expressly premised on a finding of cause. . . . Whether in the circumstances just cause exists to excuse a juror is a matter within the discretion of the . . . court. . . . *State* v. *Apodaca*, [supra, 303 Conn. 386]; see also *State* v. *Cubano*, 203 Conn. 81, 88–89, 523 A.2d 495 (1987) ([t]he trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion)." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 315 Conn. 564, 576, 109 A.3d 453, cert. denied,     U.S.    , 136 S. Ct. 84, 193 L. Ed. 2d 73 (2015). "We have recognized that unavailability due to illness may constitute cause to excuse a juror." Id., 583.

In this case, the defendant's appeal suffers from a misapprehension of the procedural history that must be remedied before we properly can address his claims. That misapprehension centers on precisely when E.A. was excused from her jury service for purposes of § 54-82h (c). The defendant argues that E.A. was improperly excused from her jury service when the "unauthorized"

person permitted her to leave the courthouse. In light of the record, it is our view that, for purposes of § 54-82h (c), E.A. was not excused from her jury service at that point, but rather she was excused from jury service after the court heard from counsel and decided to replace her with an alternate.

We acknowledge that it was not the trial judge who initially permitted E.A. to leave the courthouse. It was, however, the trial judge who ultimately made the decision to excuse her from her jury service. Indeed, after learning from the jury clerk that E.A. had been told she could leave the court, the trial judge sought input from the parties regarding how it should proceed. The defendant argued for the court to bring E.A. back. The court certainly could have opted to do so. Given her reported illness and the time that already had been lost that morning, however, the court opted instead to excuse her and then selected an alternate as required by § 54-82h (c).

Therefore, although the court specifically noted, with respect to E.A. initially being permitted to leave the courthouse, that "I didn't give permission for that juror to be released," the court did not simply select an alternate without giving the parties an opportunity to be heard. After giving the parties that opportunity, the court appears to have credited the report from the clerk that E.A. had told someone that she was too ill to remain. The court then effectively excused E.A. when it announced its intent "to use the statutory procedure for choosing two of the alternates who will be seated as regular jurors." Accordingly, E.A. was excused from her service as a juror when the court did so after receiving input from the parties. With the point of E.A.'s excusal clarified, we now turn to the defendant's statutory claim.

Although the defendant's statutory claim is not entirely clear and seems to be inextricably intertwined with his constitutional claims, he appears to be claiming that the court violated § 54-82h (c) in the following ways. First, he argues, the court did not make a reliable, independent determination that E.A. could not perform her duty because an unidentified person, not the court, excused E.A. Second, he appears to argue that the statute requires the court to give the defendant notice and hold a hearing to be able to make an informed decision regarding a juror's ability to serve before it may excuse the juror. In essence, he appears to be claiming that the court failed to exercise its discretion altogether because the unidentified person, rather than the court, actually excused E.A. Third, he argues that the statute was violated because he was not permitted an opportunity to ask questions of E.A. or assess the credibility of the person who excused her. We reject each of these contentions.

As to the defendant's first argument in support of

his statutory claim, that the court did not determine independently that there was cause to excuse E.A., it fails because, as we already have explained, it was in fact the court, not an unidentified person, who excused E.A. from jury service. The court accepted the representation that E.A. was ill. As we have noted, illness is good cause to excuse a juror. *State* v. *Gonzalez*, supra, 315 Conn. 583.

Next, as to the defendant's contention that E.A. was excused without notice and a hearing, this too fails. The record clearly demonstrates that after learning from a member of the courthouse staff that E.A. reportedly was suffering from the flu, the court held a discussion on the record before deciding to replace her. Thus, after announcing what it had learned from the clerk, the court gave the parties an opportunity to be heard on the matter. Defense counsel took that opportunity to place on the record numerous objections to excusing E.A. After hearing these objections, the court decided to excuse E.A. and replace her with an alternate. The court further explained that the trial already had been delayed that morning, that witnesses were waiting, and that it did not want to delay the start of trial any further. Therefore, given the information that E.A. was ill and having received input from both parties, the court properly exercised its discretion in deciding not to delay the trial and to replace E.A. with an alternate.

Finally, to the extent that the defendant argues that he was entitled personally or through counsel to assess the credibility of E.A.'s excuse, neither § 54-82h (c) nor the cases that have construed it require an opportunity for the parties to question a juror before the court may excuse her. See, e.g., id., 582–84 (court's excusal and replacement of juror who reported to court clerk by telephone that she would be unavailable that day because of medical condition was not abuse of discretion). Therefore, on the basis of the plain language of the statute and *Gonzalez*, the defendant's reliance on *State* v. *Apodaca*, supra, 303 Conn. 384, for the proposition that the court must hold a hearing during which the parties can question a juror, is misplaced.

In *Apodaca*, on the fifth day of evidence, at approximately 10:30 a.m., the trial court informed the parties that a juror had reported to the caseflow coordinator by telephone that she was suffering from the flu. Id., 383. After hearing the parties' positions on whether it should dismiss the juror, the court deferred decision on the matter. Id., 384. In the meantime, at the court's request, the caseflow coordinator telephoned the juror, who reported that she was not sure when she would feel well enough to return to jury duty. Id. Approximately one hour later, the court "reason[ed] that [the juror] presently was ill, that the court was not optimistic that she would be well enough by 2 p.m. to resume her duties and that, even if she did return, [the juror] might

spread her illness to other jurors due to the close proximity that they shared. The court further reasoned that a delay could result in the loss of other jurors because the trial already had exceeded the estimated time frame that had been given to the jury and protracted testimony still lay ahead. Accordingly, the court ruled that it was excusing [the juror] for the aforementioned reasons and that an alternate juror would be selected by lot." Id., 384–85.

Our Supreme Court held that the trial court's decision was "well founded, and therefore cannot be deemed an abuse of discretion"; id., 387; because "[t]he trial court articulated the basis of its . . . decision to excuse [the juror]: she was ill; unable to confirm when she would be well enough to return, and still potentially infectious; and a delay risked the loss of other jurors due to the trial having already exceeded its projected completion date." Id., 386.

Unlike the defendant in this case, we do not read *Apodaca* to require the trial court to conduct a credibility assessment of a juror's report of illness as a prerequisite to finding cause to excuse the juror. Neither the trial court nor the parties in *Apodaca* personally questioned the juror regarding her symptoms. After soliciting additional information through the caseflow coordinator, the trial court based its decision to excuse the juror on the potential delay that would arise from the uncertain time of her return as well as the possibility that, when she did return, she might be contagious. Although the court in this case did not follow up with E.A. to obtain more specific information regarding her reported illness, it, like the trial court in *Apodaca*, based its decision to excuse E.A. on proper considerations of efficiency and the other jurors' and witness' time. Neither the clear language of § 54-82h (c) nor *Apodaca* required more.

For the foregoing reasons, we do not conclude that the court abused its discretion by crediting the report of E.A.'s illness, deciding that it was not going to delay any further the start of the trial in order to bring her back to the courthouse, and determining accordingly that there was cause to excuse her.

Even if we were to conclude that the court abused its discretion when it excused E.A. and replaced her with an alternate juror, the defendant has not shown that he was harmed as a result. The defendant argues that harm should be presumed. He also contends that, even though harm should be presumed, he still has demonstrated harm in this case because the unauthorized excusal of E.A. decreased the racial diversity of the jury panel. We disagree.

This court has stated that a "violation [of § 52-84h (c)] does not necessarily implicate the defendant's constitutional rights and a reversal of conviction is not

automatic." *State* v. *Walton*, 41 Conn. App. 831, 843, 678 A.2d 986 (1996); see also *State* v. *LaBrec*, 270 Conn. 548, 558, 854 A.2d 1 (2004) ("the mechanisms for providing for and dismissing alternate jurors, and the circumstances under which they may be substituted for regular jurors, do not implicate . . . constitutional rights" [internal quotation marks omitted]); *State* v. *Williams*, 231 Conn. 235, 244, 645 A.2d 999 (1994) ("a violation of § 54-82h [c] does not implicate the defendant's constitutional rights"), overruled in part on other grounds by *State* v. *Murray*, 254 Conn. 472, 487 and n.9, 757 A.2d 578 (2000).

"Rather, the defendant bears the burden of proving that he was harmed by the substitution of the regular juror with an alternate." *State* v. *Walton*, supra, 41 Conn. App. 843. The defendant must show "how the dismissal of the juror created unfairness to the defendant." *State* v. *Mills*, 57 Conn. App. 356, 365, 748 A.2d 891 (2000); see also *State* v. *Bowens*, 62 Conn. App. 148, 157, 773 A.2d 977 ("even if the court had abused its discretion, the defendant cannot show that the dismissal of [the juror] resulted in any harm to him"), cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). In other words, the defendant must show that "the rulings of the trial court resulted in a jury that could not judge his guilt impartially." (Internal quotation marks omitted.) *State* v. *Mills*, supra, 364.

Although our case law is clear that the defendant must prove that the substitution of a juror resulted in harm, the defendant nevertheless argues that "[p]rejudice must be presumed under the circumstances of this case . . . ." On the basis of numerous nonbinding cases, he posits that because the excusal of E.A. took place by a "secret proceeding" that excluded him from a critical stage of the prosecution and produced no record for review, this court must presume prejudice. We disagree.

As we previously have discussed, the factual premise of a secret proceeding on which the defendant's argument rests is incorrect. In particular, although an unnamed individual dismissed E.A. from the jury assembly room, E.A. was not excused from jury service until the court subsequently determined that it would follow the applicable statutory procedure for choosing an alternate to replace her. The court did not make this determination in secret; it decided to replace E.A. on the record, after notifying counsel that E.A. reportedly was ill and providing counsel with the opportunity to present argument. The court then followed the proper procedure for choosing an alternate by lot. As a result, the nonbinding cases on which the defendant relies are factually distinguishable. E.g., *Scott* v. *State*, 219 Ga. App. 798, 799–800, 466 S.E.2d 678 (1996) (reversal required where trial court, relying on jury foreperson's representation that juror had become ill during delibera-

tions, replaced ill juror without consulting counsel for either party); *Bruckshaw* v. *Frankford Hospital of Philadelphia*, 619 Pa. 135, 154–55, 58 A.3d 102 (2012) ("[t]he removal of a presumptively competent juror, by a court officer, without notice to the court, without notice to the parties, and the substitution with the last alternate juror [instead of the first, as required by statute] is so inimical to the integrity of our jury system that the presumption of prejudice arising therefrom is conclusive").

In addition to declining the defendant's invitation to presume harm under the circumstances of this case, we conclude that the defendant has not demonstrated that he was harmed by the replacement of E.A. with an alternate juror. The defendant, who is African-American, argues that he was harmed by the loss of racial diversity of the jury when E.A., an African-American woman, was excused. This court previously has considered and rejected a similar argument.

In *State* v. *Diaz*, 94 Conn. App. 582, 588–89, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006), this court concluded that the defendant failed to demonstrate that he was harmed by a juror's excusal when he argued only that the dismissed juror was the lone Hispanic juror and the defendant was Hispanic. See also *State* v. *Lane*, 101 Conn. App. 540, 549–50, 922 A.2d 1107 (where African-American juror failed to appear for trial at required time, court's substitution of alternate was permissible, nondiscriminatory basis for juror's removal and did not violate defendant's right to equal protection or fair trial), cert. denied, 283 Conn. 910, 928 A.2d 538 (2007).

Here, as in *Diaz*, the defendant does not allege that the remaining jurors were unable to judge his guilt impartially. *State* v. *Diaz*, supra, 94 Conn. App. 589. Indeed, "[a]lternate jurors, by statute, must have the same qualifications and be selected in the same manner as regular jurors." *State* v. *Williams*, 108 Conn. App. 556, 566, 948 A.2d 1085 (2008). Additionally, by not having exhausted his allotment of peremptory challenges, the defendant implicitly conveyed his acceptance of the alternate jurors available to replace E.A. "Unless all his peremptory challenges have been exercised before the completion of jury selection, it is presumed that no juror was permitted to serve whom the defendant regarded as biased or unsuitable, although he might have preferred others." *State* v. *Vitale*, 190 Conn. 219, 225, 460 A.2d 961 (1983). Thus, in essence, the court here simply substituted for one acceptable juror another equally acceptable juror. Accordingly, the defendant has not demonstrated that he was harmed by the court's substitution of an alternate for E.A.

For the foregoing reasons, we conclude that the court did not violate § 54-82h (c) when, after learning that E.A. reportedly was ill and holding a hearing, it excused

E.A. and replaced her with an alternate juror.

B

Next, we address the defendant's argument, which he asserts for the first time on appeal, that the court violated various constitutional rights when it excused E.A. and replaced her with an alternate. We conclude that this unpreserved claim is unreviewable because, despite the constitutional label he has affixed to this claim, the defendant has failed to allege a claim of constitutional magnitude.

The defendant claims on appeal that "the excusal of the juror E.A. by a clerk or some other unauthorized person outside of the courtroom violated . . . the following interrelated and overlapping constitutional rights: the right to be present, the right to individual voir dire, the right to be heard by the defendant himself and by counsel, the right to due process of law, and the right to a public trial." Because the defendant concedes that he did not raise this claim at trial, we consider his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant may prevail on an unpreserved claim only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Wright*, 319 Conn. 684, 688, 127 A.3d 147 (2015). "[T]he first two [prongs of *Golding*] involve a determination [as to] whether the claim is reviewable; the second two . . . involve a determination [as to] whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *LaBrec*, supra, 270 Conn. 555.

The defendant's unpreserved claim fails under the second prong of *Golding*. "This court previously has held . . . that the process for selecting and dismissing alternate jurors, including § 54-82h (c), does not implicate constitutional rights." *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005); see also *State* v. *LaBrec*, supra, 270 Conn. 558–59 (*Golding* review of defendant's claim that trial court violated § 54-82h [c] unavailable because claim was not of constitutional magnitude). Although the record is adequate for review, the defendant's claim, which is predicated on the court's allegedly improper excusal and replacement of E.A., is not of constitutional magnitude and, therefore, does not warrant *Golding* review.[3]

II

The defendant next claims that "the trial court abused its discretion in refusing to rule on the motion in limine

and in denying a mistrial after [a] witness testified, just as defense counsel had anticipated, that the defendant went to jail for robbery." We disagree.

The following additional facts pertain to this claim. The defendant filed a motion in limine in which he sought an order prohibiting the state from introducing evidence of his 2007 arrest and robbery charge.[4] On January 7, 2013, the court held a hearing on the motion. At the hearing, it was undisputed that the defendant had been convicted of the 2007 robbery charge. The state represented that it did not intend to introduce any evidence of the defendant's robbery conviction during its case-in-chief. The court then stated that it would "hold this motion in abeyance until such time as the defense puts on a case and you decide to put [the defendant] on the stand or somebody else. And it will be relevant at that moment since the state just told me it's not going to put on evidence of . . . his prior robbery conviction in its case-in-chief."

Defense counsel expressed concern that certain witnesses who had talked about the defendant's prior bad acts at the defendant's hearing on probable cause would do so again at his trial. The court replied, "[i]f somebody says something objectionable, object and I'll hear your objection. I don't know what the witnesses are going to say. I'm not even sure who all the witnesses are going to be. I'm not going to anticipate something. I'm going to wait until it happens."

Nevertheless, defense counsel then asked the court to instruct the state to direct Johnson, one of the aforementioned witnesses at the probable cause hearing,[5] not to mention the defendant's robbery conviction in her trial testimony. The court declined this invitation, concluding the matter by stating that "the state's attorney just told me he wasn't going to ask or raise issues about [the defendant's] robbery conviction in the case-in-chief. If somebody says something objectionable, object."

At the defendant's trial, Johnson testified during the state's case-in-chief. Twice during her testimony, Johnson referred to the defendant's prior robbery conviction.[6] After the first instance, which occurred on direct examination, the defendant objected, and the court excused the jury. Defense counsel then made an oral motion for a mistrial, which the court denied. The court solicited from defense counsel a suggestion for a curative instruction to the jury, indicating that in the absence of a suggestion it would "tell the jury [to] ignore the last statement that was made," and would order the statement stricken from the record. Defense counsel declined to suggest a curative instruction. When the jury returned to the courtroom, the court directed the jurors to ignore Johnson's mention of the defendant's robbery conviction.[7]

Thereafter, during a recess, defense counsel obtained the court's permission to reduce the motion for a mistrial to writing and submit it. The court then explained the basis for its prior denial of the oral motion for a mistrial—namely, the lack of detail that Johnson had provided regarding the defendant's prior conviction. The court also noted that, in the absence of a suggested curative instruction from the defendant, the court "thought it was better not to mention the statement itself because all that would do is highlight it. And I struck it from the record . . . ."

Although after Johnson first mentioned the defendant's prior conviction the court twice instructed her not to volunteer any information beyond the call of counsel's questions,[8] the court's instructions proved ineffective. During the state's redirect examination, Johnson unresponsively referred to the defendant having been released from jail. See footnote 6 of this opinion. Immediately thereafter, the court said "I'm going to order that last comment stricken. Ignore it. Let's proceed." Defense counsel then made a second oral motion for a mistrial, which the court denied. In its final instructions to the jury, the court directed jurors not to consider evidence that had been stricken from the record.

Our review of a trial court's ruling on a motion in limine is limited to determining whether the court properly exercised its discretion. "It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence . . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . [I]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Creech*, 127 Conn. App. 489, 495, 14 A.3d 434, cert. denied, 301 Conn. 906, 17 A.3d 1045 (2011).

Our review of a court's denial of a motion for a mistrial is similarly curtailed. "It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . .

"[Although] the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be

given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the . . . jurors' exposure has prejudiced a defendant." (Internal quotation marks omitted.) *State* v. *Anderson*, 163 Conn. App. 783, 791, 134 A.3d 741, cert. denied, 321 Conn. 909,     A.3d (2016).

We turn first to the defendant's claim that the court abused its discretion by refusing to rule on his motion in limine. The court characterized its action as holding the motion in abeyance. We conclude that the court reserved decision on the motion with regard to the defendant's request to preclude the state from offering evidence regarding the prior robbery conviction[9] when it accepted the state's representation that it was not going to offer any such evidence in its case-in-chief, ruling that the defendant would have to wait until "somebody says something objectionable" and then object. We further conclude that the court's reservation of decision on the motion was a proper exercise of its discretion. See Practice Book § 42-15 (court may reserve decision on motion in limine).

The defendant argues that the foreseeability both of the state calling Johnson as a witness and of Johnson's mentioning the defendant's prior conviction, in light of her divulgence of the same at the probable cause hearing, indicates that the court abused its discretion. Put differently, he argues that the court vitiated the very purpose of a good faith motion in limine, which is to exclude *anticipated* evidence. For several reasons, we disagree with the defendant that Johnson's disclosures were so foreseeable that the court's failure to order that she be warned against making them[10] was arbitrary or unreasonable.

At the hearing on the defendant's motion in limine, the state represented that it did not intend to offer evidence of the defendant's prior conviction during its case-in-chief. Additionally, the mere fact that Johnson would testify did not require the court to anticipate that she would divulge the defendant's criminal history; as the court noted, in each instance Johnson's disclosure was wholly unresponsive to the prosecutor's line of questioning. Finally, we cannot say, in this case, that an order to the prosecutor to warn Johnson against making these disclosures would have been successful. As the record reveals, the court's two warnings to Johnson following the first disclosure proved ineffective: shortly thereafter, she again mentioned that the defendant previously had been in jail. For these reasons, we cannot say that the court's election to reserve decision on the defendant's motion in limine was an abuse of discretion.

We next turn to the defendant's claim that the court abused its discretion by denying his motions for a mis-

trial. Again, the defendant argues that the court could have avoided the harm to the defendant flowing from Johnson's reference to the defendant's robbery conviction because it was foreseeable. Specifically, he argues that the court and the state had ample time to warn Johnson in advance not to refer to the conviction in her trial testimony as she had done at the probable cause hearing. The defendant also argues that he suffered prejudice because the jury readily could infer that he had gone to jail for robbery in the recent past: Contrary to the court's characterization of Johnson's testimony as lacking in detail, the prejudice to the defendant was not minimized by the jury not knowing the degree of the charged robbery, when it occurred, when the defendant went to jail for it, and how much jail time he received. We disagree.

As we already have noted, the giving of a curative instruction, such as the court gave here, carries great weight in our determination of whether the court's denial of a motion for mistrial was an abuse of discretion. See *State* v. *Anderson*, supra, 163 Conn. App. 791. Here, after both of Johnson's unresponsive disclosures that the defendant had been convicted of robbery and had previously been in jail, the court promptly gave the jury a curative instruction directing jurors to ignore each statement and informing them that each statement would be stricken from the record. Additionally, in its final instructions, the court instructed the jurors that they were not to consider as evidence any testimony that had been stricken from the record.

"It is well established that, [i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions. . . . The burden is on the defendant to establish that, in the context of the proceedings as a whole, the challenged testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it." (Citation omitted; internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 659–60, 899 A.2d 1 (2006); see also *State* v. *Doehrer*, 200 Conn. 642, 654, 513 A.2d 58 (1986) ("[a]ny possible prejudice stemming from the portion of the question that the jury did hear was cured by the prompt curative instruction and the further instruction given by the judge in his final charge"); *State* v. *Williams*, 64 Conn. App. 512, 539–40, 781 A.2d 325 (denial of motion for mistrial not abuse of discretion where, immediately following prosecutor's question "[d]o you recall [the defendant] going to jail back in October of 1996?" court instructed jury to "[p]lease ignore that, ladies and gentlemen" and directed prosecutor to discontinue line of questioning), cert. granted on other grounds, 258 Conn. 911, 782 A.2d 1251 (2001) (appeal dismissed April 24, 2003).

Here, the defendant has not carried his burden to

demonstrate that the prejudicial effect of Johnson's testimony exceeded the ameliorative effect of the court's curative instructions. Indeed, each curative instruction that the court gave was carefully calculated to mitigate any prejudice. As the court told defense counsel, it had opted generally to direct jurors to ignore Johnson's foregoing statement rather than possibly to highlight the statement by specifically mentioning it. Although invited to suggest the language in which the court should have couched the curative instruction, "[t]he defendant . . . neither submitted a request to charge nor took exception to the court's charge on this point. He cannot now be heard to complain that the trial court failed to cure any prejudice caused by [the offending] remark." *State* v. *Moye*, 199 Conn. 389, 396, 507 A.2d 1001 (1986) (where court gave curative instruction couched in general terms to avoid undue emphasis on remark and defendant failed to suggest alternative or object to court's instruction, denial of motion for mistrial was not abuse of discretion).[11]

Additionally, the state's case against the defendant was otherwise strong. The state presented ample evidence on the basis of which the jury reasonably could have found that the defendant committed these crimes. The robbery of the victim took place in the same manner in which the defendant had told Johnson he planned to carry it out. The testimony of numerous witnesses, corroborated by cell phone evidence, placed the defendant at the scene during the events in question. Afterward, the defendant was wearing the victim's leather jacket and boasting of having taken the victim's marijuana, cash, gold chain, and cell phone.

In sum, on the record before us, it does not appear that an injustice has been done. The court acted within its wide discretion in determining that its curative instructions had so obviated any prejudice flowing from Johnson's remarks that a mistrial was unwarranted.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-82h (c) provides in relevant part: "If, at any time, any juror shall, for any reason, become unable to further perform the duty of a juror, the court may excuse such juror and, if any juror is so excused or dies, the court may order that an alternate juror who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial or deliberation shall then proceed with appropriate instructions from the court as though such juror had been a member of the regular panel from the time when the trial or deliberation began. . . ."

[2] We refer to the jurors by initials to protect their legitimate privacy interests. *State* v. *Williams*, 108 Conn. App. 556, 558 n.2, 948 A.2d 1085 (2008).

[3] Additionally, the defendant's claims that E.A. was excused off the record, in secret, and outside his presence or the presence of counsel, in violation of his constitutional rights, rest on the factual premise that E.A. was excused when she was dismissed from the jury assembly room instead of when the court decided to employ the statutory procedure to replace her. As we previously have discussed in part I A of this opinion, this premise is incorrect. After learning that E.A. had been dismissed from the jury assembly room, the court excused her on the record, after giving counsel notice of her reported illness and the opportunity to be heard.

[4] The defendant also sought to preclude the state from introducing evi-

dence regarding his "previous involvement in a domestic violence case." That portion of the motion in limine is not at issue in this appeal.

[5] The defendant requested the same instruction with regard to Patterson, another witness who had mentioned the defendant's criminal history at the probable cause hearing. Patterson did not mention the defendant's prior conviction in his trial testimony.

[6] In the first instance, Johnson was testifying regarding her relationships with the defendant and the victim. Johnson testified that the defendant, a friend, had introduced her to the victim, "and he and I instantly hit it off. I was just like oh he's mad cool. We exchanged phone numbers and then we became friends as well. And then later, [the defendant] went to jail for robbery—"

In the second instance, Johnson referred to the defendant having been released from jail in the following exchange that occurred between the prosecutor and Johnson:

"Q. Okay. The timeline—when did [the defendant] live in your mother's house? Do you remember? Was it before November of 2009 or after?

"A. Yeah. During the . . . duration of time when he just came home from jail."

[7] The court stated the following: "Okay, members of the jury, just before you were excused a moment ago, the witness made a statement that was unresponsive to the question that was asked. You are to ignore that statement. The statement is stricken from the record. Let's proceed."

[8] After denying the defendant's first oral motion for a mistrial, the court admonished Johnson outside the presence of the jury, stating "just don't volunteer things, okay?" Shortly thereafter, again outside the presence of the jury, the court reiterated its admonition during the following exchange among the court, the prosecutor, and Johnson:

"The Court: [I] take it you had an opportunity to speak to your witness about making voluntary statements regarding criminal conduct by this defendant?

"[The Prosecutor]: [S]he came in late this morning and I was unable to. And the first time she responded to the subpoena was Monday morning. I was remiss.

"The Court: Okay. Well I think I indicated on the record before, ma'am, if you're asked a question about what [the defendant] said, you can say what [the defendant] said but just don't volunteer stuff that you're not asked about, all right?

"The Witness: All right."

[9] We note that the court did reserve decision on the motion in limine with regard to the state's use of the defendant's prior conviction for impeachment purposes "until such time as the defense puts on a case and you decide to put [the defendant] on the stand. . . . And it will be relevant at that moment since the state just told me it's not going to put on evidence of . . . his prior robbery conviction in its case-in-chief." Because the defendant elected not to testify, the state had no occasion to introduce impeachment evidence. See *State* v. *Crumpton*, 202 Conn. 224, 230, 520 A.2d 226 (1987) (prior conviction may be admissible if defendant testifies, putting credibility in issue).

[10] Insofar as the specific basis of the defendant's claim on appeal is the court's denial of his request for an instruction to Johnson not to testify as to the defendant's robbery conviction, we note that the defendant did not include this request in his written motion in limine but only requested it orally at the hearing on that motion. The state argues that the court was entitled to disregard the motion because it did not comply with Practice Book § 42-15, which states that a motion in limine "shall be in writing . . . ." Nevertheless, the state neither objected to the defendant's request on this ground nor argues before this court that it was deprived of notice or otherwise prejudiced by the oral motion. Accordingly, we will consider the denial of the defendant's oral request as a basis for this appeal. Cf. *State* v. *Andrews*, 313 Conn. 266, 273 n.4, 96 A.3d 1199 (2014) (rejecting defendant-appellant's claim that court should have denied state's oral motion in limine summarily as procedurally improper where defendant did not object to motion on procedural grounds or claim on appeal that he was deprived of adequate notice to respond or otherwise was harmed, and cited no authority).

[11] We note briefly the defendant's argument that the court's denial of his motions for a mistrial was an abuse of discretion because Johnson referred to "the specific legal consequences attendant to [the defendant's prior] conduct." *State* v. *Nash*, supra, 278 Conn. 659. In *Nash*, one of our Supreme Court's reasons for affirming the trial court's denial of the defendant's motion for mistrial was that "the allegedly improper statement . . . that [the witness] knew the defendant 'from previous related police intervention in the

area in the past' is vague as to whether the defendant had engaged in any misconduct to prompt the police intervention. [The witness'] statement conceivably could have been a reference to a situation in which the defendant had been a victim, a witness or an innocent bystander." Id., 658. In particular, the statement "[did] not reference explicitly a notorious criminal past . . . specific facts concerning improper conduct by the defendant [or] the specific legal consequences attendant to such conduct." (Citation omitted.) Id., 658–59.

Although the court in *Nash* observed that the absence of these references weighed in favor of concluding that the court properly had denied the motion for a mistrial in that case, *Nash* does not stand for the proposition that the presence of any such reference requires a mistrial. Furthermore, in the present case, as in *Nash*, "[t]o the extent that the jury arguably could have interpreted the isolated statement to mean that the defendant had engaged in prior misconduct . . . and thus it potentially could have relied on that statement as improper propensity evidence, it is significant that the trial court provided a curative instruction to the jury." Id., 659. Accordingly, the defendant's reliance on *Nash* is misplaced.

----