******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

DARRYL ANDREW BONDS, JR. *v.* COMMISSIONER
OF CORRECTION
(AC 46191)

Bright, C. J., and Cradle and Schuman, Js.

*Syllabus*

The petitioner, who had been convicted of felony murder, robbery in the
first degree, and conspiracy to commit robbery in the second degree,
sought a writ of habeas corpus, claiming that his trial counsel, S, had
provided ineffective assistance during plea negotiations by, among other
things, failing to adequately advise him to accept a plea deal and failing
to adequately advise him regarding the strength of the state's case.
The petitioner alleged that, but for his counsel's allegedly deficient
performance, he would have pleaded guilty and received a more favor-
able disposition. The habeas court rendered judgment denying the peti-
tion, from which the petitioner, on the granting of certification, appealed
to this court, claiming, inter alia, that the court incorrectly concluded
that he had failed to prove that he was prejudiced by S's deficient
performance because there was a reasonable probability that, but for
S's failure to give specific and appropriate advice, he would have
accepted the plea offer. *Held* that the habeas court's determination that
the petitioner did not prove that he was prejudiced by S's allegedly
ineffective assistance was not clearly erroneous: the habeas court found
that the petitioner's testimony that he would have pleaded guilty instead
of proceeding to trial was not credible and therefore concluded that
the petitioner did not establish that he would have accepted a plea offer
had S advised him any differently about the plea offer or the state's
evidence, and the court's findings regarding whether the petitioner
would have accepted the plea offer, which were made solely on the
basis of the court's credibility determinations, were entitled to deference;
moreover, the court did not single out the petitioner's testimony with
respect to whether he would have accepted the state's plea offer but,
rather, rejected his testimony as a whole, the court having heard the
petitioner admit on cross-examination at the habeas trial that he had
told the sentencing judge six times that he was innocent and that he
would not admit to something that he did not do, and, accordingly, the
court reasonably could have concluded that a petitioner who maintained
his innocence so strongly on a felony murder charge was unlikely to
plead guilty to the lesser charge of manslaughter offered by the state;
furthermore, regardless of whether the court erred in its conclusion
that there was no evidence that the trial court would have accepted the
state's plea offer, and, although there was no dispute that the plea offer
would have involved a conviction and a sentence that was less severe
than that which was imposed, the petitioner's failure to prove that he
would have accepted the plea offer was fatal to his appeal.

Argued December 5, 2023—officially released February 6, 2024

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *M. Murphy, J.*; judgment
denying the petition, from which the petitioner, on the
granting of certification, appealed to this court.
*Affirmed.*

*Judie Marshall*, for the appellant (petitioner).

*Danielle Koch*, deputy assistant state's attorney, with
whom, on the brief, were *Joseph Valdes*, senior assistant
state's attorney, and *Erin Stack*, deputy assistant state's
attorney, for the appellee (respondent).

*Opinion*

SCHUMAN, J. The petitioner, Darryl Andrew Bonds, Jr., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claim of ineffective assistance of trial counsel. We affirm the judgment on the ground that the habeas court properly found that the petitioner did not prove that he was prejudiced by any ineffective assistance.

The following facts and procedural history are relevant to our disposition of this appeal. On November 4, 2009, the petitioner and his friend, Tyrone Tarver, participated in the robbery and shooting of the victim, Denny Alcantara. *State* v. *Bonds*, 172 Conn. App. 108, 112–14, 158 A.3d 826, cert. denied, 326 Conn. 907, 163 A.3d 1206 (2017). The suspects took a black leather jacket, gold chain, cell phone, money, and marijuana from the victim, and the victim was shot twice in the stomach. Id., 113. The victim ultimately died of a gunshot wound to the abdomen. Id.

In December, 2010, the petitioner was arrested for this incident pursuant to a warrant. Id., 114. In May, 2014, prior to trial, the state filed a second substitute information charging the petitioner with one count of felony murder in violation of General Statutes (Rev. to 2009) § 53a-54c, one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and one count of conspiracy to commit robbery in the second degree in violation of General Statutes § 53a-48 (a) and General Statutes (Rev. to 2009) § 53a-135. Id., 114–15. A jury found the petitioner guilty of all counts. Id., 115. The court, *White, J.*, sentenced the petitioner to a total effective term of fifty-five years of incarceration, followed by five years of special parole. Id. This court affirmed the conviction on direct appeal. Id., 138.

The petitioner subsequently filed the present habeas action and, in his third amended petition, alleged that his criminal trial counsel, Stephan Seeger, had rendered ineffective assistance during plea negotiations prior to his criminal trial.[1] Specifically, the petitioner alleged that Seeger provided constitutionally deficient performance by, among other things, failing to adequately advise him to accept a plea deal and failing to adequately advise him regarding the strength of the state's case. The petitioner also alleged that, but for his counsel's allegedly deficient performance, he would have pleaded guilty and he would have received a more favorable disposition. The respondent, the Commissioner of Correction, filed a return denying the allegations in the operative petition or leaving the petitioner to his proof.

The court, *M. Murphy, J.*, held a trial on the habeas petition on May 17 and 26, 2022, at which five witnesses testified: the petitioner; Seeger; Joseph Valdes, the prosecutor at the petitioner's criminal trial; Brian Carlow,

an attorney whom the petitioner presented as a legal expert; and Yvania Collazo, the petitioner's cousin, who testified at the petitioner's criminal trial. The parties also submitted documentary evidence to the court, including an email exchange between Seeger and Valdes that took place after Tarver's trial but more than six months prior to the petitioner's criminal trial, which described aspects of the plea negotiations.

On November 17, 2022, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. The court summarized the evidence and made the following relevant findings in support of its decision. "[The petitioner] was represented by [Seeger] at all criminal proceedings at issue in the present matter. Seeger reviewed police reports, witness statements, conducted discovery, and met with [the petitioner] to discuss the case and the state's evidence. Seeger determined that the state's evidence against [the petitioner] and Tarver was significant. Seeger advised [the petitioner] about the risk of going to trial and that, although a jury could acquit him . . . the evidence connecting [the petitioner] and Tarver at the time of the murder could result in the jury convicting him. Seeger described his advice as making sure that [the petitioner] 'knew exactly moving forward there were consequences of him not taking the plea.' . . . The decision whether to accept the state's plea offer or proceed to trial was solely [the petitioner's].

"Tarver's trial occurred prior to [the petitioner's trial]. Thus, Tarver's trial and outcome—a jury convicted him of felony murder, robbery in the first degree, and conspiracy to commit robbery in the third degree[2]—served as a barometer for [the petitioner's] upcoming jury trial. Seeger's advice, primarily premised on the identical evidence in both Tarver's and [the petitioner's] cases, was unaltered by the result of Tarver's trial. Seeger recalled that he may have informed [the petitioner] that the state might want Tarver to cooperate and testify in his case, which could benefit Tarver at his sentencing.[3] Otherwise, the evidence in both defendants' cases was the same." (Citation omitted; footnotes added; footnote omitted.)

On the basis of the email exchange and testimony from Seeger and Valdes, the court also found that, after the Tarver trial, the state offered the petitioner a sentence of either twenty-five years of incarceration or, alternatively, twenty years of incarceration, followed by ten years of special parole, in exchange for a guilty plea to a charge of reckless manslaughter. Although the habeas court specifically found that Seeger communicated the twenty year offer to the petitioner and also stated that "Seeger advised [the petitioner] about the plea *deals*," at no point did the habeas court find that Seeger had specifically recommended or advised the petitioner to accept or reject either offer. (Emphasis

added.)

The court made the following additional findings. "Seeger discussed the state's evidence with [the petitioner] and gave him the pros and cons. Seeger noted that juries can be fickle, and it is difficult to predict what a jury will decide. [The petitioner] had to weigh and balance the plea offer versus going to trial. Seeger testified that he generally advises the client, but the ultimate decision to go to trial is made by the client. Regarding [the petitioner's] case, Seeger testified that he did not tell [the petitioner] that he would win the case if he went to trial, and he advised [the petitioner] of the consequences of not taking the plea.

"On cross-examination, Seeger noted that [the petitioner] was still quite young at the time his criminal case was being prosecuted. Seeger wanted to make sure that [the petitioner] paid attention to the offer because a trial would likely lead to a fifty to sixty year sentence. Seeger strove to make sure that [the petitioner] understood the consequences of going to trial following Tarver's conviction.

"[The petitioner] testified that he never saw a police report and that Seeger never reviewed a police report with him. Nor did Seeger review any witness statements with him. According to [the petitioner], Seeger immediately prior to trial conveyed the twenty-five year plea offer to him and advised him to not take the plea offer because Seeger did not think the evidence was sufficient and there was no eyewitness to the shooting. [The petitioner] said that Seeger never explained to him what the state needed to prove to convict him of felony murder. [The petitioner] also stated that he never received two offers, only one just prior to trial. . . . [The petitioner] stated that had he fully understood the offer of twenty years plus ten years [of] special parole, then he would have accepted that plea offer.

"On cross-examination, [the petitioner] acknowledged that it was his decision to go to trial instead of pleading guilty. However, he stated that, after Tarver's conviction and fifty year sentence, he asked Seeger what he should do. Seeger, according to [the petitioner], told him to still go to trial, and that he trusted that advice because Seeger felt that [a certain witness] statement would not be admitted and that he could impeach Collazo with her multiple statements."

On the basis of its findings, the court rejected the petitioner's claim of ineffective assistance of counsel. The court first concluded that Seeger did not render deficient performance during plea negotiations. The court explained: "As to the allegation that Seeger failed to adequately advise [the petitioner] of the evidence against him, the court concludes that this claim has no merit. The court does not credit [the petitioner's] testimony that Seeger did not show him and review

items such as police reports and witness statements, nor does the court credit his testimony that Seeger never explained to him what the state needed to prove to convict him of felony murder. The court credits Seeger's testimony about his review, investigation, and discussions with [the petitioner]. Therefore, the claim that Seeger failed to adequately advise [the petitioner] of the evidence against [him] must fail.

"The court also does not find credible [the petitioner's] testimony regarding plea offer communications. . . . The court does not find credible [the petitioner's] testimony that, after Tarver's conviction and fifty year sentence, he asked Seeger what he should do and that Seeger told him to go to trial, and that he trusted that advice because Seeger felt that [a certain witness] statement would not be admitted and that he could impeach Collazo with her multiple statements. To summarize: the court does not find [the petitioner] to be a credible witness regarding the salient plea negotiation issues."

The court further found that "Seeger advised [the petitioner] about the plea deals and the strength of the state's case. Seeger balanced the need to advise [the petitioner] of what could happen if he did not accept the plea deal and being prepared to go forward with the trial if that is what [the petitioner] wanted to do. [The petitioner] was aware from Seeger's advice and the outcome of Tarver's trial that his own trial might result in his conviction. In other words, [the petitioner] fully understood the risk of proceeding to trial and chose a trial knowing the significant risk he was taking. [The petitioner's] persistence in maintaining his innocence molded his decision to proceed with the trial. [The petitioner] continued to proclaim his innocence even at the sentencing hearing."

The court concluded that the petitioner also failed to establish that he was prejudiced by his counsel's allegedly deficient performance, explaining: "The court does not find credible [the petitioner's] present day testimony that he would have pleaded guilty instead of proceeding to trial. Furthermore . . . there is no evidence establishing with a reasonable probability that a judge would have conditionally accepted any of the state's plea offers as communicated in the negotiations with Seeger. [The petitioner] has also not persuaded this court that he would have accepted a plea offer had Seeger advised him any differently about the plea offer or the state's evidence." Thereafter, the court granted the petitioner's petition for certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the habeas court erred in determining that Seeger did not render deficient performance in two related respects: (1) Seeger did not make a direct recommendation to the petitioner about whether to accept the state's offer; and (2) Seeger failed to advise the petitioner about the desirability of plead-

ing guilty in light of Tarver's conviction, the risk of a significantly higher sentence following trial, and the admissibility of some of the key evidence that the state would offer. Both of these claims implicate our Supreme Court's recent decision in *Maia* v. *Commissioner of Correction*, 347 Conn. 449, 298 A.3d 588 (2023), which the petitioner cites.[4] The petitioner also claims that the court erred in concluding that he had failed to prove that he was prejudiced by Seeger's deficient performance because there is a reasonable probability that, but for Seeger's failure to give specific and appropriate advice, he would have accepted the plea offer and therefore resolved his case more favorably. In support of his claim, the petitioner relies on his testimony from the habeas trial that, had he been advised to take the plea offer, he would have done so.

The petitioner bears the burden of proving ineffective assistance of counsel under the well established standard of *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Jordan* v. *Commissioner of Correction*, 341 Conn. 279, 281–82, 267 A.3d 120 (2021); *Quintana* v. *Warden*, 220 Conn. 1, 5, 593 A.2d 964 (1991). In cases such as this one, involving plea negotiations, to prevail on a claim of ineffective assistance of counsel the petitioner must establish that "(1) counsel's performance was deficient, and (2) there was a reasonable probability that—but for the deficient performance—the petitioner would have accepted the plea offer, and that the trial court would have assented to the plea offer." *Moore* v. *Commissioner of Correction*, 338 Conn. 330, 340, 258 A.3d 40 (2021). "An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 176 Conn. App. 616, 625–26, 170 A.3d 736 (2017). As stated in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland* v. *Washington*, supra, 697.

We resolve this case on the basis of the prejudice prong. "[T]o satisfy the prejudice prong of the *Strickland* test when the ineffective advice of counsel has led a defendant to reject a plea offer, the habeas petitioner must show [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence

that in fact were imposed." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 355–56, 273 A.3d 680 (2022).

As previously recited, the habeas court stated that it "does not find credible [the petitioner's] present day testimony that he would have pleaded guilty instead of proceeding to trial. . . . [The petitioner] has also not persuaded this court that he would have accepted a plea offer had Seeger advised him any differently about the plea offer or the state's evidence." We review these findings deferentially. Ordinarily in a habeas appeal, the ultimate question of whether a habeas petitioner's right to the effective assistance of counsel is "a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . In the context of rejected plea offers, however, the specific underlying question of whether there was a reasonable probability that a habeas petitioner would have accepted a plea offer but for the deficient performance of counsel is one of fact, which will not be disturbed on appeal unless clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, supra, 343 Conn. 356–57.

Not only does a clearly erroneous standard apply in the present case on the issue of prejudice, but the habeas court made its findings regarding whether the petitioner would have accepted the plea offer solely on the basis of credibility determinations, which calls for further deference. "The habeas court had the opportunity to observe firsthand the conduct, demeanor and attitude of the witnesses, and, therefore, it is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) Id., 358. In this case, the habeas court heard and saw the petitioner testify at considerable length.

There were several other factors supporting the habeas court's determination that the petitioner was not a credible witness on the issue of prejudice. First, the habeas court did not single out the petitioner's testimony with respect to whether he would have accepted the state's guilty plea offer but, rather, rejected the petitioner's testimony across the board. The court ultimately found that it "does not find [the petitioner] to be a credible witness regarding the salient plea negotiation issues." Second, the court heard the petitioner admit on cross-examination that he had told the judge at sentencing six times that he was innocent and that he was not going to admit to something that he did not do. The court reasonably could have concluded that a petitioner who maintained his innocence so strongly on a felony murder charge was unlikely to plead guilty to a manslaughter charge.[5] Thus, the habeas court had good

reason not to accept the petitioner's testimony that he would have pleaded guilty had Seeger advised him differently about the state's plea offer.

The petitioner also attacks, as clearly erroneous, the court's finding on the issue of prejudice that "there is no evidence establishing with a reasonable probability that a judge would have conditionally accepted any of the state's plea offers as communicated in the negotiations with Seeger." The petitioner points to testimony from Valdes, the prosecutor handling the case, that "the judge wanted this case to be resolved," and that he had "no reason to believe that the judge would have gone on the record and said that he would have found the offer . . . unacceptable." We decline to reach this issue. Regardless of whether the habeas court erred in its conclusion with respect to the second factor of the prejudice test, that the court would have accepted the plea offer but for his trial counsel's alleged deficient performance, the petitioner still did not prove the first factor, that he would have pleaded guilty to the offer. See, e.g., *Rogers* v. *Commissioner of Correction*, 194 Conn. App. 339, 346 n.6, 221 A.3d 81 (2019) ("[b]ecause we conclude that the habeas court properly found that the petitioner failed to meet his burden of demonstrating that it is reasonably probable that he would have accepted the plea deal but for his trial counsel's alleged deficient performance, we do not address the second prong of the prejudice test"). Indeed, there is also no dispute about the third factor of the prejudice test, namely, that the plea offer would have involved a conviction and sentence less severe than that which was imposed. As is the case with the second factor, however, the petitioner's failure to prove the first factor, that he would have accepted the plea offer, is fatal to his appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The third amended petition included additional counts against the petitioner's trial counsel, a claim against his appellate counsel, and a due process count alleging that the state had failed to preserve certain evidence. The petitioner withdrew these counts at the start of the habeas trial, and they are not subjects of this appeal. In addition, the operative petition included a count alleging that the state knowingly presented false testimony. The habeas court concluded that the petitioner had abandoned this claim and, in the alternative, that there was no merit to the claim. The petitioner does not challenge that determination on appeal.

[2] See *State* v. *Tarver*, 166 Conn. App. 304, 141 A.3d 940, cert. denied, 323 Conn. 908, 150 A.3d 683 (2016). Tarver received a total effective sentence of fifty years to serve, followed by ten years of special parole. Id., 309. The jury returned its verdict in that case on January 18, 2013. Id.

[3] The court noted that Valdes had explained that, "in the state's opinion, based on the evidence, Tarver was not the shooter. The state offered Tarver the ability to testify against [the petitioner], but Tarver declined to do so."

[4] In *Maia*, the Supreme Court held: "There is no per se requirement that defense counsel must recommend whether a client should accept a plea offer. . . . This is because providing a specific recommendation implicates two critical and sometimes conflicting rights: On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses

of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . The need to provide a specific recommendation in any particular case depends on a number of factors, including the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Citations omitted; internal quotation marks omitted.) *Maia* v. *Commissioner of Correction*, supra, 347 Conn. 463.

[5] There was no discussion about whether the petitioner indicated a willingness to plead guilty under the *Alford* doctrine, pursuant to which a defendant "does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Higgins*, 88 Conn. App. 302, 303 n.1, 869 A.2d 700, cert. denied, 274 Conn. 913, 879 A.2d 893 (2005); see *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).